IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **WILLIAM GALBRAITH,** | No. CV 09-437-MO |
| Plaintiff, | |
| | Related Cases: |
| v. | |
| | No. CV 09-438-MO |
| | No. CV 09-439-MO |
| **MML INVESTOR SERVICES, INC.,** | No. CV 09-443-MO |
| and **MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY,** | No. CV 09-459-MO |
| Defendants. | OPINION & ORDER |

**MOSMAN, J.**,

Over an eleven-year period from 1995 to 2006, securities broker Charles Wesley Rhodes, Jr. engaged in an elaborate Ponzi scheme that defrauded several investors, including plaintiff William Galbraith, of over eleven million dollars. *SEC v. Rhodes*, No. CV-06-1353-MO, 2009 WL 1227774 (D. Or. May 4, 2009). Mr. Rhodes was employed as a registered representative of defendants MML Investor Services, Inc. and Massachusetts Mutual Life Insurance Company (collectively, "MML") from 1995 until August 31, 1998. Upon learning of the fraud, plaintiff sued MML alleging claims for securities fraud, negligence, common law fraud, and breach of fiduciary duty based on MML's failure to warn plaintiff about Rhodes's illegal conduct. (Compl.

- 1 -

(#1) 8-17.) The complaint seeks damages not only for investments made while Rhodes was a registered representative of MML, but also for thousands of dollars worth of investments made from August 31, 1998 to 2006, when Rhodes was employed by other companies. Plaintiff alleges that all the investments he made after August 31, 1998, were consequential damages of duties breached by MML before August 31, 1998.

In an Opinion and Order (#30) of December 11, 2009, I granted MML's motion to dismiss plaintiff's claims to the extent those claims were based on plaintiff's investments, or MML's actions, after Rhodes left MML on August 31, 1998. Plaintiff moved to certify this issue for appeal, arguing that the Court failed to consider the implications of his agency relationship with MML. (Mot. (#31).) Because plaintiff's motion presented new theories and arguments that were not raised in response to defendants' motion to dismiss, I construed plaintiff's motion as a motion for reconsideration. (Order (#34).) Consistent with my original analysis, I find that MML's duty to plaintiff, whether as an agent or a broker, extended only to those investments made while Rhodes worked for MML. Accordingly, I deny plaintiff's motion as to both reconsideration and certification.

## DISCUSSION

I.    **Motion for Reconsideration**

"Reconsideration is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *Nunes v. Ashcroft*, 375 F.3d 805, 807-08 (9th Cir. 2004) (quoting *Sch. Dist. No. 1J v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993)). Plaintiff seeks reconsideration on the ground the Court committed clear error or reached a decision that was manifestly unjust.

In arguing for reconsideration, plaintiff suggests that I did not consider whether MML owed him a duty beyond merely an ability to exercise independent judgment over an investor's money. Plaintiff asserts that the Court overlooked the principal-agent relationship between MML and plaintiff, which itself creates "separate duties to provide all material information, and to warn, disclose, and protect." (Mem. in Supp. (#32) 6.)

I agree that agency is recognized in Oregon as a special relationship, and an agent may be liable in negligence for breaching his or her duties of loyalty and care. *Boyer v. Salomon Smith Barney*, 188 P.3d 233, 237 (Or. 2008). These duties include an obligation to provide "full, fair and frank disclosure." *Lindland v. United Bus. Invs., Inc.*, 693 P.2d 20, 22 (Or. 1985). The Opinion and Order of December 11, 2009 (#30) does not suggest otherwise. Plaintiff has sufficiently alleged a special relationship with MML from 1995 to August 31, 1998, and whether defendants breached duties created by their relationship with plaintiff remains a critical issue in this case. For purposes of this motion, however, the relevant issue is the scope of a broker's duty to the investor, whether that relationship is characterized as a broker-investor or agent-principal relationship. Consistent with my previous order, I find that MML's putative agency relationship with plaintiff was created by the act of investment and the duties inherent in that relationship extend only to investments made while Rhodes worked for MML.

Plaintiff emphasizes that Oregon law does not define a fiduciary relationship by reference to the discretionary nature of an investment account, and argues that the Court's opinion erroneously defined plaintiff's special relationship in this manner. (*See* Mem. in Supp. (#32) 11.) I disagree with plaintiff's interpretation of the opinion. As described by the Oregon Supreme Court, "[t]he focus is not on the subject matter of the relationship, such as one party's financial future; nor is it on whether one party, in fact, relinquished control to the other. The focus instead

- 3 -

is on whether the *nature of the parties' relationship* itself allowed one party to exercise control in the first party's best interests." *Bennett v. Farmers Ins. Co. of Or.*, 26 P.3d 785, 799 (Or. 2001) (emphasis in original); *see also Conway v. Pac. Univ.*, 924 P.2d 818, 824 (Or. 1996) ("In all [special] relationships, one party has authorized the other to exercise independent judgment in his or her behalf and, consequently, the party who owes the duty has a special responsibility to administer, oversee, or otherwise take care of certain affairs belonging to the other party.").

Under these principles, plaintiff's act of investment is material simply because investment, along with Rhodes's employment, are the sole factual allegations through which a reasonable jury could find that defendants exercised control or judgment on behalf of plaintiff. (*See* First Am. Compl. (#20) ¶ 8 ("Rhodes established custodial discretionary accounts with Plaintiffs and other investors which imposed a heightened degree of supervision and control upon MML."); *id.* at ¶ 11 ("Rhodes assumed a fiduciary relationship of trust and loyalty with Plaintiffs . . . and, through this agency relationship [between Rhodes and MML] . . . [MML] also had a fiduciary relationship with the Plaintiffs."); *id.* at ¶ 38 ("Defendants are jointly liable with Rhodes for breach of the fiduciary duty of care and loyalty under the doctrines of agency and respondeat superior.").) The putative special relationship—and defendants' duties to plaintiff—ended when Rhodes stopped working for MML, plaintiff stopped investing with defendants' firm and defendants ceased to exercise control or judgment on plaintiff's behalf. Therefore, although I agree it was reasonably foreseeable that plaintiff would continue to invest with Rhodes if he were not warned about Rhodes's misconduct, I disagree that Oregon law holds MML liable for investment losses from misconduct that occurred while MML no longer exercised responsibility or control over either Rhodes or plaintiff's investments.

"Either formulation—duty or foreseeability—is a method of describing how the law

limits the circumstances or conditions under which one member of society may expect another to pay for harm suffered." *Buchler v. Oregon*, 853 P.2d 798, 803 (Or. 1993). When Oregon courts have used principles of foreseeability to extend liability beyond a special relationship, they have done so only in the context of physical, not economic, harm. For example, plaintiff cites *Fuhrer v. Gearhart-By-The-Sea, Inc.* for the proposition that a duty to warn and protect is limited by the foreseeability of harm. But, in *Fuhrer*, the plaintiff sued the defendant-hotel for personal injury and death, not economic loss. 760 P.2d 874, 877 (Or. 1988); *see also Miller v. Tabor W. Inv. Co., LLC*, 196 P.3d 1049, 1055 (Or. Ct. App. 2008) (holding that a landlord has a duty to "protect a tenant from foreseeable unreasonable risks of *physical harm* posed by another tenant," regardless of whether that harm occurs on or off the landlord's premises) (emphasis added) (internal quotation omitted). By relying on this line of personal injury cases, plaintiff ignores the implications of Oregon's economic loss doctrine, which mandates that a claim for economic loss be "predicated on some duty of the negligent actor to the injured party beyond the common law duty to exercise reasonable care to prevent foreseeable harm." *Onita Pac. Corp. v. Trs. of Bronson*, 843 P.2d 890, 896 (Or. 1992). This doctrine is a common-law limitation on liability developed out of concern that tort claims for economic damages could lead to "limitless recoveries" and "ruinous consequences." *See Harris v. Suniga*, 149 P.3d 224, 226 (Or. Ct. App. 2006), *aff'd*, 180 P.3d 12 (Or. 2008) (quoting *Ore-Ida Foods v. Indian Head*, 627 P.2d 469 (1981)).

      Therefore, in the context of a claim for economic losses arising from negligence, "the concept of duty as a limiting principle takes on a greater importance than it does with regard to the recovery of damages for personal injury or property damage." *Onita*, 843 P.2d at 896 (quoting *Hale v. Groce*, 744 P.2d 1289 (1987)). Because Oregon law requires plaintiff to invoke a special

relationship in order to hold defendants liable for his economic losses, it is appropriate to analyze defendants' liability in the context of that relationship. *See Fuhrer*, 760 P.2d at 438 ("If a specific affirmative duty is imposed by statute, status or relationship, an analysis based on that specific duty is also appropriate."); *see also Or. Steel Mills, Inc. v. Coopers & Lybrand, LLP*, 83 P.3d 322, 327-28 (Or. 2004) ("[I]f the plaintiff invokes a special status, relationship, or standard of conduct, then that relationship may 'create,' 'define,' or 'limit' the defendant's 'duty' to the plaintiff.") (citing *Fazzolari v. Portland Sch. Dist. No. 1J*, 734 P.2d 1326 (Or. 1987)) (emphasis added). In the rare cases in which Oregon courts have considered the interplay between the economic loss doctrine, special relationships, and foreseeability, they have only applied principles of foreseeability to <u>limit</u> a defendant's liability <u>within</u> the special relationship. *See Or. Steel Mills*, 83 P.3d at 328-332. *Allstate Ins. Co. v. Tenant Screening Servs., Inc.*, 914 P.2d 16, 20-22 (Or. Ct. App. 1996). Oregon courts have never applied principles of foreseeability to extend a defendant's liability for economic losses beyond the boundaries of a special relationship, and I decline to do so here.

## II.     Motion for Certification

To the extent plaintiff seeks certification under 28 U.S.C. 1292(b), that motion is likewise denied. Under 28 U.S.C. § 1292(b), a district court may certify an interlocutory appeal when the court's order "involves a controlling question of law as to which there is substantial ground for difference of opinion" and the court determines "that an immediate appeal from the order may materially advance the ultimate termination of the litigation."

I am not persuaded that this issue is "controlling" simply because reversal may require a new trial on the question of damages. (*See* Mem. in Supp. (#32) 4.) As plaintiff implicitly acknowledges, the underlying issue affects only damages, not liability. I recognize that my

- 7 -

decision affects a large percentage of plaintiff's alleged damages, but that fact is not sufficient to convince me that this question is controlling within the meaning of 28 U.S.C. § 1292(b). Instead, I place greater significance on the fact that further proceedings will be required regardless of whether the order is affirmed or reversed on appeal.

    I further disagree that certification in this case would avoid needless expense and delay. This action was filed on April 14, 2009. Yet, due to several intervening motions, defendants have yet to answer the First Amended Complaint. An interlocutory appeal at this early stage would severely delay, rather than materially advance this litigation.

## CONCLUSION

    For the foregoing reasons, I DENY Plaintiff's Motion for Certification Under 28 U.S.C. § 1292(b) (#31).

    IT IS SO ORDERED.

    DATED this  7th  day of June, 2010.

                                             /s/ Michael W. Mosman
                                             MICHAEL W. MOSMAN
                                             United States District Court